```
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF NEW HAMPSHIRE
```

**G. Brandt Atkins**

    **v.**                                    Civil No. 13-cv-257-PB
                                              Opinion No. 2014 DNH 001

**U.S. Bank National
Association, et al.**


### MEMORANDUM AND ORDER

This case arises from a loan obtained by G. Brandt Atkins secured by a mortgage on his home in North Hampton, New Hampshire.  Atkins claims that he was forced to sell his home for an artificially low price because his lender and several associated entities unreasonably refused his request to modify his loan and improperly instituted foreclosure proceedings against him after he experienced financial difficulties.

Defendants Bank of America, N.A., Wells Fargo Bank, N.A., and U.S. Bank National Association as Trustee for the Holders of the Bear Stearns Asset-Backed Securities Trust 2004-AC2 ("U.S. Bank Trust") jointly move for dismissal pursuant to [Federal Rule of Civil Procedure 12(b)(6)](). For the reasons set forth below I grant defendants' motion to dismiss.

## I. <u>BACKGROUND</u>[1]

On January 6, 2004, Atkins entered into a loan with Countrywide Home Loans for $611,835. The loan was secured by a mortgage held by Mortgage Electronic Registration Systems, Inc. ("MERS") as nominee for Countrywide and its assignees. Countrywide later assigned the loan to the Bear Stearns Asset Based Services Trust 2004-AC2, and U.S. National Bank Association was named as trustee. At a point not specified in the complaint, BAC Home Loans Servicing, a subsidiary of Bank of America, N.A., became responsible for servicing the loan.

Atkins entered into a loan modification agreement with BAC Home Loans on October 23, 2009. The modified loan had the same maturity date as the original loan. The principal due on the modified loan was listed as $467,535.72 and the loan provided for an annual interest rate of 5.25%.

On May 17, 2010, Bank of America sent Atkins a notice of its intention to accelerate the loan based on a missed loan payment. Atkins does not take issue with the bank's claim that he missed a payment and he admits that he stopped making payments on the loan in March 2011. A few months later, Atkins contacted Bank of America and attempted to negotiate a second

---

[1] Unless otherwise specified, facts are taken from Atkins's complaint. Doc. No. 1-1.

loan modification. Although a bank representative told Atkins that he met the requirements for pre-approval for a loan modification under the Home Affordable Modification Program ("HAMP"), the bank ultimately refused to modify his loan. Initially, the bank explained that it had denied his request because he failed to provide sufficient supporting documentation. Ultimately, on February 22, 2013, Atkins received a letter from the bank stating that his loan was ineligible for modification because the bank "services the loan on behalf of Wells Fargo, and that said investor has not given the contractual authority" to Bank of America to modify the loan.[2]

Atkins received his first notice of foreclosure from U.S. Bank in August 2012. The foreclosure sale was postponed at least four times, with notices of foreclosure printed in the local newspapers. The final foreclosure sale, scheduled for February 13, 2013, was cancelled because Atkins had a pending Purchase and Sale Agreement on the property. Atkins ultimately sold the property for $699,900, which was allegedly far less than its true value. Atkins claims that real estate brokers told him that the property was "tainted" by public knowledge of

---

[2] The complaint does not explain Wells Fargo's role in overseeing Atkins's loan.

3

the foreclosure proceedings.

## I.   STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must make factual allegations sufficient to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when it pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id. (citations omitted).

In deciding a motion to dismiss, I employ a two-step approach.  See Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 12 (1st Cir. 2011).  First, I screen the complaint for statements that "merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action." Id. (citations, internal quotation marks, and alterations omitted).  A claim consisting of little more than "allegations that merely parrot the elements of the cause of action" may be dismissed.  Id.   Second, I credit as true all non-conclusory

4

factual allegations and the reasonable inferences drawn from those allegations, and then determine if the claim is plausible. Id.  The plausibility requirement "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" of illegal conduct.  Twombly, 550 U.S. at 556.  The "make-or-break standard" is that those allegations and inferences, taken as true, "must state a plausible, not a merely conceivable, case for relief."  Sepúlveda-Villarini v. Dep't of Educ., 628 F.3d 25, 29 (1st Cir. 2010); see Twombly, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level.").

## II.  ANALYSIS

Atkins asserts that defendants are liable for damages because they violated New Hampshire's Consumer Protection Act, breached the implied contractual covenant of good faith and fair dealing, and negligently hired, trained, and supervised their employees.  I address each claim in turn.

### A.  New Hampshire Consumer Protection Act

Atkins alleges in counts one and two that defendants violated New Hampshire's Consumer Protection Act ("CPA").  N.H. Rev. Stat. Ann. § 358-A.  To state a claim under the CPA, Atkins must plead facts sufficient to show that defendants used an

5

"unfair or deceptive act or practice in the conduct of any trade or commerce" within New Hampshire.  Id. at § 358-A:2.  See Gilroy v. Kasper, 654 F.Supp.2d 44, 49 (D.N.H. 2009).  The CPA contains a nonexhaustive list of forbidden acts. Other, non-listed conduct is assessed by the so-called "rascality test," which asks whether conduct " 'attain[s] a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce.'"  Gilroy, 654 F.Supp.2d at 49 (citing State v. Sideris, 157 N.H. 258, 263, 951 A.2d 164 (2008); Milford Lumber Co. v. RCB Realty, 147 N.H. 15, 17, 780 A.2d 1259 (2001)).  The CPA also includes statutory exemptions for certain conduct.  N.H. Rev. Stat. Ann. § 358-A:3.

    Atkins claims that defendants violated the CPA by: (1) refusing to modify his loan even though he had complied with all requests for documents concerning the proposed modification; (2) encouraging him to apply for a loan modification even though they knew that the holder of his note had not authorized anyone to negotiate a loan modification on its behalf; (3) failing to comply with HAMP guidelines, which prohibit a covered entity from referring  a mortgage for foreclosure while a loan modification request is pending; and (4) threatening to foreclose on his property without a valid assignment of the mortgage.

6

Defendants respond by invoking N.H. Rev. Stat. Ann. § 358-A:3 I, which exempts from the CPA "trade or commerce that is subject to the jurisdiction of the bank commissioner . . . or federal banking or securities regulators who possess the authority to regulate unfair or deceptive trade practices." The bank defendants argue that as national banks, they are subject to the comprehensive regulations of the Office of the Comptroller of the Currency ("OCC"). Bank of America argues in the alternative that it is subject to the jurisdiction of the New Hampshire Bank Commissioner when it acts as a loan servicer. N.H. Rev. Stat. Ann. § 397-B.

Business activities of national banks and their operating subsidiaries are controlled by the National Bank Act ("NBA") and OCC regulations. Watters v. Wachovia Bank, N.A., 550 U.S. 1, 6, 21 (2007) (citing 12 U.S.C. § 1 et seq.). These business activities include real estate lending. 12 U.S.C. § 371. National banks can make real estate loans "without regard to state law limitations concerning," among other things, the terms of a loan, including "the circumstances under which a loan may be called due and payable," and the "processing, origination, servicing, sale or purchase of, or investment or participation in, mortgages." 12 C.F.R. § 34.4 (a)(4, 10).

Here, all three defendants are registered with the OCC as national banks.[3]  The OCC's power to regulate national banks is comprehensive, and the OCC "plainly has the authority to protect consumers from the same kinds of fraudulent, deceptive, and unfair practices that are targeted by the Consumer Protection Act."  Aubertin v. Fairbanks Capital Corp., 2005 DNH 021, 6 (citing OCC Advisory Letter 2002-3 at 3 (March 22, 2002)).[4]  Defendants invoked the OCC's power in their motion to dismiss, and cited relevant law to support their exemption argument.  They need do no more.

### B.  Duty of Good Faith and Fair Dealing

Count three alleges that defendants violated the implied covenant of good faith and fair dealing by accelerating payments under the note and proceeding with foreclosure while Atkins's request for a loan modification was pending.  Doc. No. 1-1.

"In every agreement, there is an implied covenant that the parties will act in good faith and fairly with one another."

---

[3] U.S. Department of the Treasury, Office of the Comptroller of the Currency, National Banks Active as of 11/30/2013, http://www.occ.gov/topics/licensing/national-bank-lists/national-by-name-pdf.pdf (listing Bank of America, Wells Fargo, and U.S. Bank as national banks).

[4] Because each defendant is exempt as a national bank, I need not decide the applicability of exemptions pursuant to the jurisdiction of the state bank commissioner.

Birch Broad, Inc. v. Capitol Broad. Corp., Inc., 161 N.H. 192, 198, 13 A.3d 224 (2010). New Hampshire applies the covenant to contract formation issues, terminations of at-will employment agreements, and limitations on discretion in contractual performance. Id. Atkins bases his claim on a contention that defendants abused discretion granted to them under the note agreement when they accelerated his loan and instituted foreclosure proceedings. The New Hampshire Supreme Court has described this aspect of the covenant as "comparatively narrow, [with a] broader function [ ] to prohibit behavior inconsistent with the parties' agreed-upon common purpose and justified expectations as well as with common standards of decency, fairness and reasonableness." Id (citations omitted).

Assuming that Atkins has adequately pleaded the existence of a contractual relationship, his good faith and fair dealing claim "turns on three key questions: (1) whether the agreement allows or confers discretion on the defendant to deprive the plaintiff of a substantial portion of the benefit of the agreement; (2) whether the defendant exercised its discretion reasonably; and (3) whether the defendant's abuse of discretion caused the damage complained of." Moore v. Mortgage Elec. Registration Sys., Inc., 848 F.Supp.2d 107, 129 (2012)(citations omitted).

9

Atkins's promissory note[5] contains an acceleration clause, stating that a "default" occurs if Atkins does not "pay the full amount of each monthly payment on the date it is due." Doc. No. 6-2. If Atkins defaults, the note holder has the right to send him a written warning that a failure to pay the overdue amount by a certain date – at least thirty days after the notice was mailed – allows the note holder to require immediate payment of the full amount of principal and all accrued interest. The contract states that this right is not waived should the note holder choose not to exercise it.

The acceleration clause clearly affords the note holder discretion, yet in no way can Bank of America's notice of intent to accelerate the loan be viewed as an unreasonable exercise of that discretion. Atkins alleges that on May 17, 2010, Bank of America sent him a notice of intent to accelerate due to a missed payment on April 1, 2010. He also admits that he stopped making payments on the loan in March 2011, well before the foreclosure occurred. A lender does not violate the duty of good faith and fair dealing merely by invoking a right to relief

---

[5] Although the note was not attached the complaint, I can consider it at this stage due to its centrality to the plaintiff's claim and because it is a document sufficiently referred to in the complaint. Worrall v. Fed. Nat'l Mortg. Ass'n, 2013 DNH 158, 3 (quoting Rivera v. Centro Medico de Turabo, Inc., 575 F.3d 10, 15 (1st Cir. 2009)).

in the event of a default that is expressly authorized in the contract.  See Moore, 848 F.Supp.2d at 129, 130 (reasoning that the duty of good faith and fair dealing cannot be used to require a lender to modify or restructure a loan).

Atkins also claims that defendants violated the duty of good faith and fair dealing by proceeding with foreclosure while Atkins's loan modification application was pending.  "Courts have generally concluded, however, that the covenant of good faith and fair dealing in a loan agreement cannot be used to require the lender to modify or restructure the loan." Moore, 848 F.Supp.2d 107, 130; see also Gikas v. JPMorgan Chase Bank, N.A., 2013 DNH 057, 8; Ruivo v. Wells Fargo Bank, N.A., No. 11-cv-466-PB, 2012 WL 5845452, at *3 (D.N.H. Nov. 19, 2012).  This is so because "[p]arties are bound by the agreements they enter into and the court will not use the implied covenant of good faith and fair dealing to force a party to rewrite a contract so as to avoid a harsh or inequitable result." Ruivo, 2012 WL 5845452 at *4 (citing, among other cases, Moore, 848 F.Supp.2d at 130; Olbres v. Hampton Co-op. Bank, 142 N.H. 227, 233 (1997)).

Atkins does not allege that any of the defendants misled him by promising to refrain from foreclosing on his home while his request for a loan modification was pending.  Instead, he

11

merely argues that it is a breach of the duty of good faith and fair dealing to proceed with a foreclosure while a request to modify a loan is pending.  I find no support in the case law for this proposition.  Accordingly, I agree with the defendants that Atkins has failed to state a viable good faith and fair dealing claim.

C.   **Negligent Hiring, Training, and Supervision**

Atkins's final claim sounds in negligence, alleging that the defendants had a duty to train and supervise their agents and to implement sufficient controls to safeguard customers; that they breached their duty; and that as a result Atkins was harmed when he "received faulty mortgage servicing."  The damages he seeks stem from economic losses he suffered as a result of alleged negligence by Bank of America.[6]

As a general rule, a plaintiff may not recover in tort for economic losses associated with a contractual relationship. Schaefer v. Indymac Mortg. Serv., 731 F.3d 98, 103 (1st Cir. 2013).  Although New Hampshire recognizes exceptions to the general rule, none apply here.  In certain circumstances, a

---

[6] Atkins stakes his negligence claim only on various representations made by Bank of America's representatives throughout the loan modification process.  Thus, his claim must be dismissed against Wells Fargo and U.S. Bank Trust, as none of their actions could conceivably be tied to a negligent hiring, training, and supervision claim.

12

lender may expose itself to tort liability for economic losses by voluntarily assuming certain duties to a borrower. "The burden [,however,] is on the borrower, seeking to impose liability, to prove the lender's voluntary assumption of activities beyond those traditionally associated with the normal role of a money lender." Moore, 848 F.Supp.2d at 133 (quoting Seymour v. N.H. Sav. Bank, 131 N.H. 753, 759, 561 A.2d 1053 (1989)).

All of the actions on which Atkins could conceivably rest his claim involve Bank of America's actions relating to the loan modification process – duties and actions traditionally associated with the normal role of a money lender.  As such, the negligent hiring, supervision, and training claim must be dismissed against all parties.

## IV.   CONCLUSION

For the reasons set forth above, I grant defendants' motion to dismiss Doc. No. 6.

SO ORDERED.

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

January 2, 2014
cc:   G. Brandt Atkins
      Thomas J. Pappas, Esq.